IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Criminal Action No. 06-118-JJF |
| | : | |
| KEVIN L. PEARSALL, | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S RESPONSE TO GOVERNMENT'S
MOTION IN LIMINE**

**I.   INTRODUCTION**

Defendant, Kevin Pearsall, by and through his undersigned attorneys, files the instant Response to the government's Motion *In Limine*. Herein, Mr. Pearsall asks this Court to deny the government's motion for the reasons set forth below.

**II.   PROCEDURAL HISTORY**

The defendant, Kevin L. Pearsall, was indicted in a one count Indictment with being a felon in possession of a weapon in violation of 18 U.S.C. §§922(g) and 924(e). The Indictment alleged that on or about August 5, 2006, Mr. Pearsall possessed a Vector Model CP-1, 9mm caliber pistol, Serial Number BDD184 (Government Exhibit No. 1). Trial is scheduled for October 29, 2007.

On October 3, 2007, the government filed a Motion *in Limine* to Admit Evidence of Defendant's Possession of Handgun Pursuant to Federal Rule of Evidence 401. Defendant files the instant response in opposition of the government's motion.

**III.   FACTUAL BACKGROUND**

On August 5, 2006, police received a radio call of gunshots fired[1] in the area of Capital Green Housing Complex. Officers Kunzi and Brumgarner responded and saw two males and a female sitting together on the step of 459 New Castle Avenue, Dover. The two males were the defendant and one Leslie Brown, and the female was Ana Baez. The police directed the three to stand up. The police observed Ms. Baez, who initially refused to comply, holding onto a bulge in her shorts once she stood up. Ms. Baez was taken to the ground and Government Exhibit No. 1 was recovered from her shorts. Ms. Baez and Mr. Pearsall were immediately arrested. Mr. Brown was also taken into custody at that time.

At the station, Ms. Baez, upon being mirandized, gave a statement claiming that Mr. Pearsall gave her the gun to hold. She also informed that she was outside looking for a ride to go find some food. After her statement to police, Mr. Pearsall's hands were swabbed for the presence of Gunshot Residue (GSR). The government's expert will testify that one particle unique to and "consistent with GSR" was found to be present on the swab taken of Defendant's hand.

Ms. Baez later brokered a deal with the state and federal government to plead guilty to the misdemeanor charge of carrying a concealed deadly weapon, her original felony charges of possession of a deadly weapon by a person prohibited, carrying a concealed deadly weapon, and conspiracy in the second degree, were dismissed. Since her guilty plea, Ms. Baez has admitted to heavy drug use before and during the incident and claimed, <u>inter alia</u>, that, at the time of the incident she was outside because she was sent by two males to try to buy crack cocaine for their and her use.

---

[1] Because of the great prejudice and other concerns, the government has reached an agreement with the defense not to introduce the radio call of gunshots being fired in the area.

The government, in its motion, seeks to present the testimony of two witnesses, one[2] of whom will testify that, about 1 or 2 nights prior to the instant offense, they observed Mr. Pearsall in possession of a black color gun. That witness and her friend supposedly made their observations from some distance away, on a dark night, with a partially obstructed view. (See statement of Ms. Elaine Reed, W-1, attached hereto as Exhibit A.) The government argues that, the proffered testimony is not evidence of "prior bad acts" under Fed. R. Evid. 404(b), but rather is direct intrinsic evidence of the crime charged. The government's argument, however, is flawed.

## IV.    DISCUSSION

This Court should deny the government's motion *in limine* because, under the circumstances of this case the proffered testimony is: 1) really 404(b) prior bad acts evidence and has no probative value; and 2) not intrinsic evidence of the charged offense.

### A.    FEDERAL RULE OF EVIDENCE 404(b) PRECLUDES ADMISSION THAT MR. PEARSALL WAS SEEN WITH A GUN 1 OR 2 DAYS EARLIER

Federal Rule of Evidence 404 provides, in relevant part:

> (b)    Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident...

---

[2] The government referenced in its motion that W-1, who gave a written statement was shown a picture of a generic 9mm pistol, and she could not identify it as the <u>same</u> gun. Apparently, however, W-2 never gave a statement nor was she even shown the picture of the generic 9mm weapon.

The purpose of Rule 404(b) is to protect an accused's constitutional right to a fair trial from the tendency that character evidence has to "weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge." United States v. Sampson, 980 F.2d 883, 886 (3d Cir.1992) (quoting Michelson v. United States, 335 U.S. 469, 475-76 (1948)).

The United States Supreme Court has established, and the Third Circuit has adopted, a four-prong test to determine whether evidence of the other crimes, wrongs or acts allegedly committed by Mr. Pearsall are admissible under the Federal Rule of Evidence 404(b). See, Huddleston v. United States, 485 U.S. 681 (1988); United States v. Scarfo, 850 F.2d 1015 (3d Cir.), cert. denied, 488 U.S. 910 (1988). According to the Huddleston test, evidence of prior bad acts (1) must have a proper purpose under Rule 404(b); (2) it must be relevant under Federal Rule of Evidence 402; (3) its probative value must outweigh its potential to unfairly prejudice the defendant under Federal Rule of Evidence 403; and, (4) the court must instruct the jury to consider the "prior bad acts" evidence for its limited proper purpose only. Scarfo, 850 F.2d at 1019 (citing Huddleston, 485 U.S. at 691-92). Failing to meet any of the prongs means that the evidence must be excluded.

### 1. Testimony that Defendant Allegedly Possessed a Similar Gun Previously Does Not Have a Proper Purpose and Only Proves Propensity

The Third Circuit has emphasized that Fed.R.Evid. 404(b) "generally prohibits the admission into evidence of extrinsic acts intended to prove a defendant's propensity for crime or to suggest to the jury unfavorable inferences reflecting on his character." United States v. Scarfo, 850 F.2d 1015, 1018 (3rd Cir. 1988). The Rule specifically states that "other crimes, wrongs, or acts" evidence may be used to prove "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of

4

mistake or accident." The Third Circuit has recognized that prior bad acts evidence may also be used to provide background information concerning the defendant and the perpetration of the offense. Id. at 1019. However, none of these routes around the prohibition of propensity evidence allow for the introduction of the proffered testimony that Mr. Pearsall may have possessed a similar, black, 9mm handgun on an earlier occasion.

Here, the proffered testimony makes it clear that the witness is not claiming that she saw Mr. Pearsall in prior possession of Government Exhibit No. 1. Rather the witness would testify only that she believes that the weapon, with which she allegedly saw Mr. Pearsall in possession of, a couple of days earlier, appears to be similar to a photograph of a generic[3], 9mm type gun. She has never seen Government Exhibit No. 1, nor a photo of the exhibit. Thus, such testimony at best can only be offered to support Mr. Pearsall's propensity to possess weapons. Therefore, this evidence does not have a proper purpose and should be excluded from the evidence at trial.

**2.     The Proffered Evidence of Prior Gun Possession is Not Relevant under Federal Rule of Evidence 402**

In addition to serving a proper purpose, evidence of prior bad acts must "be logically relevant, under Rules 404(b) and 402, to any issue other than the defendant's propensity to commit the crime...." United States v. Palma-Ruedes, 121 F.3d 841, 851 (3d Cir. 1997). Consequently, before evidence of prior bad acts will be admitted, the government is required to "'articulate clearly how that evidence fits into a chain of logical inferences, no link of which can be the inference that because the defendant committed...offenses before, he therefore is more likely to have committed this one.'" United States v. Morley, 199 F.3d 129, 137 (3d Cir. 1994) (quoting Sampson, 980 F.2d at 886-87).

---

[3]In prior discussions with counsel for the government, the government informed that the photograph shown to W-1 was of a generic 9mm, semi-automatic pistol.

5

However, prior bad acts are not inherently relevant to the proper purposes articulated under Rule 404(b). Sampson, 980 F.2d at 888. Evidence is relevant where there "is a relationship between the evidence and a material fact at issue which must be demonstrated by reasonable inferences that make a material fact more probable or less probable than it would be without the evidence." Id.; see also Federal Rule of Evidence 401. The only legitimate purpose behind introduction of the proffered evidence is to encourage jurors to infer that Mr. Pearsall is a bad person, who has a tendency to possess weapons. And, this purpose cannot be achieved without negatively implicating Mr. Pearsall's character.

Unless the government's evidence shows that Mr. Pearsall possessed Government Exhibit No. 1, on a prior occasion, the proffered testimony should be excluded as it would only tend to debase Mr. Pearsall's character through innuendo. This is exactly the kind of evidence that Rule 404(b) seeks to exclude. This evidence is not relevant and, therefore, not admissible.

### 3. The Probative Value of the Alleged Possession of a Similar Gun Does Not Outweigh the Unfair Prejudice it Will Cause

Fed. R. Evid. 403 provides that relevant evidence may be excluded if its probative value is substantially outweighed by its propensity to unfairly prejudice the defendant, confuse the ultimate issues in controversy or otherwise mislead the jury, or impact other trial concerns. Unfair prejudice arises when "concededly relevant evidence... lure[s] the factfinder into declaring guilt on a ground different from proof specific to the offense charged." United States v. Ramos, 971 F.Supp. 186, 194 (E.D.Pa. 1997) (quoting Old Chief v. United States, 519 U.S. 172, 180 (1997)), aff'd, 151 F.3d 1027 (3d Cir. 1998). In determining whether the danger of unfair prejudice substantially outweighs the probative value of an item of evidence, "we must assess 'the genuine need for the challenged evidence and balance that necessity against the risk that the information will influence the jury to convict on

6

improper grounds.'" United States v. Sriyuth, 98 F.3d 739, 747-48 (3d Cir. 1996), cert. denied, 519 U.S. 1141 (1997)(quoting Scarfo, 850 F.2d at 1019).

The proffered evidence, does not tend to prove that Mr. Pearsall possessed Government Exhibit No.1 (the Vector Model CP-1, 9mm caliber pistol, Serial Number BDD184 ) on the night in question, or at some earlier point.  Rather, it only tend to suggest that Mr. Pearsall may have possessed a dark color handgun, that has some similarity to a generic photograph of a 9mm pistol. This evidence, therefore, is not needed to prove the charge offense, under 18 U.S.C. § 922(g), that Mr. Pearsall possessed Government Exhibit 1.

While the probative value of  the evidence regarding the alleged possession of a similar weapon a couple of nights earlier is virtually non-existent,  its prejudicial impact is high.  Character evidence generally runs the risk of improperly influencing a jury that an individual with a history of unlawful conduct must have committed whatever offense the government charges against him. See, e.g., Sampson, 980 F.2d at 886 (3d Cir. 1992) (quoting Michelson v. United States, 335 U.S. 469, 475-76 (1948)).[4]  Such a risk "exist[s] where there are 'substantial possibilities ... that a jury will harbor strong adverse sensitivity' to the challenged evidence." Sriyuth, 98 F.3d at 748 (quoting Cook, 538 F.2d at 1004).

Moreover, the proffered testimony will likely stray into allegations that W-1and Mr. Pearsall have had on-going problems between them, and that W-1 believes that Mr. Pearsall was some how threatening or retaliating against her for allegedly having him arrested approximately 4 nights earlier. Once the proffered evidence is permitted, therefore, it will be impossible to avoid examination of the witness about the complete circumstances of this alleged observation several nights before Mr.

---

[4]"The reasons proffered to admit prior bad act evidence may often be potemkin village, because the motive, we suspect, is often mixed between an urge to show some other consequential fact as well as to impugn the defendant's character." Sampson, 980 F.2d at 886.

7

Pearsall was arrested and charged with the instant crime of possessing Government Exhibit No.1:, the on-going animosity between them; and the disagreement that occurred between them around 4 nights prior to Mr. Pearsall's arrest on this offense. The details and history of this troubled relationship and the incident of 4 nights earlier would include allegations of such bad acts of mutual bottle throwing. Such evidence would be needed to combat the veracity of W-1, as well as to show bias. Thus, Mr. Pearsall would have to delve into other potential prior bad acts to defend against the proffered testimony.

Therefore, the proffered evidence about the alleged possession of a similar weapon should be barred by Rule 404(b).

**4.    Evidence About the Alleged Prior Possession of a Similar Gun Will Only Lead to the Confusion of Issues for the Jury**

The danger of jury confusion "arises when circumstantial evidence would tend to sidetrack the jury into consideration of factual disputes only tangentially related to the facts at issue in the current case." United States v. McVeigh, 153 F.3d 1166, 1191 (10th Cir. 1998), cert. denied, 526 U.S. 1007 (1999). "Essentially, in attempting to dispute or explain away the evidence thus offered, new issues will arise as to the occurrence of the instances and the similarity of conditions, [and] new witnesses will be needed whose cross examination and impeachment may lead to further issues." Id. (quoting 2 John Henry Wigmore, Evidence § 443, at 528-29 (James H. Chadbourn rev., 1979)). Introduction of the proffered evidence will force the defense to fully litigate the issues surrounding the allegation that he was seen earlier by W-1, not in possession of Government Exhibit No.1, but, rather, possessing a black gun that appeared similar to a photograph of a generic 9mm gun. Consequently, Mr. Pearsall will be forced to attempt to establish not only his innocence of the charge offense of possessing Government Exhibit No. 1, but also his innocence with respect to the proffered

evidence of earlier possessing a gun similar to a photograph of a generic 9mm pistol.

A cautionary instruction to the jury will not suffice to overcome the irreparable harm to Mr. Pearsall caused by the admission of evidence concerning the alleged prior possession of a similar gun. Because Ms. Reed (W-1) also told police that Mr. Pearsall was apparently also making threatening statements to her, when she made her observations, as well as other statements that he has "lots of guns and has long drugs,"[5] it is likely that this other information will also have to be put before the jury. Additionally, and as stated above, in order to defend against the proffered allegations, Mr. Pearsall will have to delve into the history and nature of the hostile relationship that exists between W-1 and him. The nature and scope of this hostility, while necessary to show bias and attack the veracity of W-1, will also likely tend to establish other bad acts evidence. Thus, in defending himself against the tenuous and prejudicial proffered evidence, Mr. Pearsall runs the risk of the jury hearing other bad character evidence. Additionally, Mr. Pearsall will likely have to present other witnesses to counter the proffered evidence. The end result is that the jury will be required to try a case within the case charged, leading to confusion, and the unnecessary waste of judicial time and economy. "[T]here is no realistic basis to believe that the jury will cull the proper inferences and material facts from the evidence" and properly judge Mr. Pearsall according to the charges as they are presented in the Indictment. Sampson, 980 F.2d. at 889.

---

[5] While this information is not included in the written statement of W-1, the government has reported that these matters were included in her earlier oral statement to it.

## B. THE PROFFERED EVIDENCE IS NOT DIRECT, INTRINSIC EVIDENCE OF THE CHARGE THAT MR. PEARSALL POSSESSED GOVERNMENT EXHIBIT NO. 1

In support of the admission of this evidence, the government argues it does not constitute prior bad acts evidence, and therefore, is not subject to the constraints of Fed.R.Evid. 404(b). Rather, the government claims that such testimony is offered to show continuous possession of the same gun charged in the Indictment. The government's arguments fail for several reasons.

First, assuming *arguendo*, that the witnesses were able to see clearly, at night and from some distance, that Mr. Pearsall had a black gun, Ms. Reed's best testimony is that say that the weapon appeared to be similar to a black semi-automatic weapon. As noted in her written statement to police on March 7, 2007, nearly eight months after the incident, "I can't say it is the same gun it was dark [outside]." Ms. Reed's statement does not establish the continuous crime of felon in possession of a gun (a 9mm Vector handgun, serial no. BDD184). Rather, at best, it may tend to show that Mr. Pearsall may have possessed another gun that was "similar" to a generic, black, 9mm semi-automatic. At no time has Ms. Reed, based upon her alleged observations made one to two nights prior to Defendant's arrest on the charges here, claimed that the two guns were the same. That is, that the weapon she allegedly saw Mr. Pearsall possessing on a prior occasion was Government Exhibit No.1, the possession of which he was charged.

The government's reliance on U.S. v. Towne, 870 F. 2d 880 (2d Cir. 1989), cert. denied, 490 U.S. 1101, 109 S. Ct. 2456 (1987) is misplaced. In affirming the trial court's admittance of Towne's possession of the pistol on prior occasions, the United States Court of Appeals for the Second Circuit stressed the fact that the evidence showed that Towne possessed the same gun, possession of which he was indicted, on other occasions, and that this demonstrated his continued dominion and control

10

of that weapon. <u>Towne</u> at 886.  For the proffered evidence to escape 404(b) scrutiny, the gun or thing possessed must be exactly the same, not just merely similar.  See <u>U.S. v. Bowie</u> 232 F. 3d 923, 929 (D.C. Cir. 2000) (stating that evidence that defendant charged with possession of counterfeit money on a given date also possessed other counterfeit bills on occasion other than that charged in the indictment, but which counterfeit bills were also obtained from the same source, was improperly admitted as evidence of a single offense).  Turning to the facts of this case, since neither of the government's witnesses can testify that the weapon they allegedly saw Mr. Pearsall with one or two nights earlier is the <u>same</u> weapon for which he is charged, the evidence is not admissible for the purpose stated by the government. See <u>Bowie</u>, *supra*.

The government also relies on <u>U.S. v. Gibbs</u>, 190 F. 3d (3d Cir. 1999), <u>cert.</u> <u>denied</u> 528 U.S. 1131, 120 S.Ct. 969 (2000), in support of the argument that the proffered evidence is not 404(b) "prior bad acts" evidence.  However, <u>Gibbs</u> is distinguishable from the instant case.  First, the defendant in <u>Gibbs</u> was charged with being a member of a drug conspiracy.  The government presented evidence of the defendant's use of force and violence in furtherance of the conspiracy without objection.  On appeal, however, Gibbs argued that the evidence should have been excluded because it served no purpose other than to establish propensity.  The Third Circuit ruled , however, that, "[i]n cases where the incident offered is part of the conspiracy alleged in the indictment, the evidence is admissible." <u>Id</u>. at 217.  In so doing, the Court stated that:

> Since the government introduced evidence of Gibbs's use of violence to further the illegal objectives of the cocaine conspiracy by removing threats to himself (since threats to Gibbs meant threats to the trafficking enterprise), the District Court did not abuse its discretion in permitting this evidence to come in.

<u>Id</u>.

11

In U.S. v. Alexander, 331 F. 3d 116 (D.C. Cir. 2003), the court considered whether the witness's 911 call to police, stating that the defendant had threatened her and that, "He got a gun on him now", ran afoul of Rule 404(b). After noting that it had criticized the "extrinsic-intrinsic distinction" used in Towne, the D.C. Court of Appeals held that, "at least in a narrow range of circumstances . . . evidence can be 'intrinsic to' the charged crime." Id. at 126. The court then found that such was the case in Alexander . Specifically, the court wrote that

> As the government correctly observes, Young's statement served "not [as] evidence of a prior possession, or possession at some point," but instead as "evidence of [Alexander's] current possession, the possession for which [Alexander] was arrested minutes later, and for which he was charged...." In other words, Young's statement provided only "intrinsic" evidence of the crime charged, not "extrinsic" evidence inviting an inference regarding Alexander's bad character.

Id.

Similar to the other cases cited by the government, the facts in United States v. Wilson, 46 Fed. Appx. 93 (3d Cir. 2002), differ greatly from the instant case. In Wilson, the government sought to establish that Wilson possessed a particular gun identified as "Exhibit 29." To that end, the district court permitted the government to present the testimony of his long-term friend, who was shown Exhibit 29. The friend identified Exhibit 29, the gun that Wilson was charged with possessing, as a firearm that: "1) he had previously received from Wilson (Government Exhibit 29); 2) he subsequently returned Government Exhibit 29 to Wilson; and 3) Wilson told him 'Cadillac William' was later arrested possessing the same gun." Id. at 96. On this basis, the Third Circuit appropriately affirmed the district court's determination that the friend's testimony was intrinsic evidence that Wilson possessed Exhibit 29, the gun charged in the indictment. The proffered evidence here, unlike that in Wilson, is neither of the quality nor type which is intrinsic to the defendant's alleged possession of the Vector 9mm, Government Exhibit No. 1. According to the proffered witnesses,

12

none of them can say that the weapon allegedly possessed by Mr. Pearsall, days before the incident, is the same as the one charged in the Indictment.

Finally, the government also cites United States v. Shea, 159 F.3d 37 (3d Cir. 1998), *cert. denied*, 526 U.S.1077, 119 S.Ct. 1480 (1999), as support for the admissibility of the proffered evidence. In Shea, the defendant was charged with attempted armed bank robbery and felon in possession of a firearm, *inter alia*. It appears that the defendant was arrested in possession of a black 357 Magnum revolver during the course of a bank robbery. This was a week after he and an accomplice allegedly attempted to rob another bank. At trial for attempted armed bank robbery and felon in possession of a weapon in connection with the first bank robbery, the victim bank teller testified that one of the robbers held a black revolver on her during the course of the attempted bank robbery. When shown the government's exhibit, the black 357 magnum revolver seized from the defendant, the witness stated that "it looked like the gun that was pointed at [her]" during the attempted robbery. The district court ruled that this revolver was admissible under F.R.E. 404(b) "on the issue of identity." Id. at 38. The Third Circuit, however, found that the admission under F.R.E. 404(b) to be "puzzling" because the "government sought to prove that the gun seized from the defendant was the same gun used in the attempted [robbery]" for which he was on trial. Id. at 39. To the extent that the district court found harmless error, the Third Circuit noted that the admission of the gun was cumulative and the weight of the additional evidence overwhelming.

The circumstances present in Shea are not analogous to those here. First and foremost, the proffered evidence being offered is not being offered to prove the crime charged, but rather to prove that the defendant possessed a similar gun on a different occasion. Second, the Court noted that the district court did not abuse his discretion under F.R.E. 401 (relevance) and 403 (probative value). In this case, even assuming that the evidence is relevant, which defendant denies, it lacks any real

13

probative value because, by the admission of the proffered witnesses, their observations of the alleged weapons were made several days earlier at night, in the dark, and at some distance from the defendant. Thus, the only value of the proffered evidence is to show that, on some prior occasion, the defendant possessed a handgun. As noted previously, under F.R.E. 404(b), such testimony should be excluded because it shows the propensity of the defendant to possess weapons. By seeking to offer such flimsy and highly prejudicial evidence as direct, intrinsic evidence of the crime charged, the government is seeking to get in through the back door what it cannot accomplish under F.R.E. 404(b).

Moreover, if the Court allows this evidence on any basis, then the defendant will be obligated to present evidence that he was not present at the place and location on the day and time that the alleged witnesses claimed to have seen him in possession of a black gun. Therefore, the jury will be saddled with a trial within a trial which will only serve to confuse the jury, and be a waste of judicial time and economy. Accordingly, the proffered evidence should be excluded.

## V.     CONCLUSION

For all of the above reasons, and any others which this Court may deem appropriate, the defendant respectfully requests that the proffered evidence be excluded.

Respectfully submitted,

/s/ Edson A. Bostic
Edson A. Bostic
Federal Public Defender

Keir Bradford
Assistant Federal Public Defender

Attorneys for Kevin L. Pearsall

Federal Public Defender's Office
District of Delaware
704 King Street, Suite 110
Wilmington, DE  19801
(302) 573-6010

Dated: October 11,  2007

# Exhibit A

FROM US ATTORNEY DELAWARE   (WED)10. 3'07 13:55/ST. 13:54/NO. 4861730563 P 2

**DEPARTMENT OF THE TREASURY – BUREAU OF ALCOHOL, TOBACCO AND FIREARMS**

**AFFIDAVIT**  PAGE 1 OF 2 PAGES

I, Glen Reed, state that I reside at [redacted]  nothing follows

nothing follows

On or about 8-1-06 I filed a report with Dover pd. The complaint (#) was showed to me by S/A DiBetta. S/A DiBetta also showed me a picture of the man that I filed the report on (1) and (yes) his name is Kevin Pennell a.k.a (Rotten). A couple of days after I filed the police report about mr. pennell. I was setting out back of my unit and heard gun shots a few minutes later I saw mr pennell walking up the alley from Fulton Rd to new Castle which is between Kent ave and water st. he saw people setting out back and he started talking about niggas don't want to see (or) him about anything and what he can and will do to other people was (he) was looking around to see who he was talking to then we saw the gun in his right hand as he was standing by the tree back of my unit which is close to new Castle ave. The gun was

I have read the foregoing statement consisting of 2 pages, each of which I have signed. I fully understand this statement and I declare, certify, verify and/or state under penalty of perjury that the foregoing is true and correct. I made the corrections shown and placed my initials opposite each. I made this statement freely and voluntarily without any threats or rewards, or promises of reward having been made to me in return for it. Executed on 3/21, 19 2007.

SIGNATURE OF AFFIANT: [signature] Glen Reed

SUBSCRIBED AND SWORN TO BEFORE ME THIS 21 DAY OF March, 19 2007.

The above address

SIGNATURE [signature]
TITLE: Special Agent

WITNESS SIGNATURE: TFO Mark Gray
TFO [signature] 37533
TITLE: TFO DE/ATF/TC

TFF 6000.1 (12-83)

**DEPARTMENT OF THE TREASURY — BUREAU OF ALCOHOL, TOBACCO AND FIREARMS**
**AFFIDAVIT**
(CONTINUATION SHEET)

PAGE 2 OF 2 PAGES

looked black in color it looked like a semi-automatic and not a revolver. From my pass and what I have seen on t.v. I can tell the difference between the two. S/A DiBetta showed me a picture of a gun I asked I can't say that it is the same gun because it was dark in the alley mostly shadows and Lee was out back. He told us to go inside the house. I don't know Lee's real name or have contact with him anymore. When we come inside we was standing at the dining room window a few minutes later he (Kevin) walked around the side of my house toward his sister's house. I want to say that I am 85% sure that the night he (Kevin) was by the tree with the gun was the same night he got arrested. Also a few times I have heard him (Kevin) say that he had "long guns" (which on the streets that means a lot of guns).

April Collins
3/21/07

SIGNATURE OF AFFIANT: April Kell
DATE: 3-21-07

ATF F 5000.2 (6-74)